## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| G.I. SPORTZ INC.<br>GI SPORTZ DIRECT LLC;<br><br>*Plaintiffs*,<br>v.<br><br>VALKEN INC.,<br><br>*Defendant*. | )<br>)<br>)<br>)<br>)   Civil Action No. _____<br>)<br>)   JURY TRIAL DEMANDED<br>)<br>)<br>) |

## **COMPLAINT**

Plaintiffs G.I. Sportz Inc. and GI Sportz Direct LLC (collectively "GI") by and through their undersigned counsel, file this Complaint against Defendant Valken Inc. ("Valken"), and allege as follows:

## **NATURE OF THE ACTION**

1. This is an action for [i] infringement of U.S. Patent No. 7,617,820 in violation of 35 U.S.C. §271, [ii] infringement of U.S. Patent No. 8,555,868 in violation of 35 U.S.C. §271, [iii] infringement of U.S. Patent No. 8,573,191 in violation of 35 U.S.C. §271, [iv] infringement of U.S. Patent No. 8,272,373 in violation of 35 U.S.C. §271, [v] infringement of U.S. Patent No. 8,336,532 in violation of 35 U.S.C. §271, [vi] infringement of U.S. Patent No. 8,739,770 in violation of 35 U.S.C. §271, [vii] federal unfair competition in violation of 15 U.S.C. §1125(a), [viii] common law trademark infringement, and [ix] violation of New Jersey's Fair Trade Act, N.J.S.A. 56:4-1.

## **THE PARTIES**

2. G.I. Sportz Inc. is a Canadian corporation with a principal place of business at 6000 Kieran, Ville St Laurent, Quebec H4S 2B5, CANADA.

3. GI Sportz Direct LLC is a Delaware limited liability company with a principal place of business at 570 Mantua Boulevard, Sewell, New Jersey 08080. GI Sportz Direct LLC is a wholly-owned subsidiary of G.I. Sportz, Inc, and is the survivor of, and the predecessor-in-interest of all rights in and to KEE Action Sports, LLC ("KEE Action"), which previously resided at and operated out of GI Sportz Direct LLC's current New Jersey address.

4. Valken is a New Jersey corporation with its principal place of business at 1 Hawk Court, Swedesboro, New Jersey 08085.

## JURISDICTION AND VENUE

5. This is an action for trade dress arising under the Lanham Act, Title 15, United States Code § 1051, et seq., and for patent infringement arising under the Patent Laws of the United States, Title 35 of the United States Code. Accordingly, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338.

6. This Court has personal jurisdiction over Valken, and venue in this Court is proper pursuant to 28 U.S.C. §§ 1391(b), (c) and § 1400(b), in that Valken resides in this District, Valken has committed acts of infringement in this District that give rise to the claims alleged herein, and Valken has a regular and established practice of business in this District.

## GI'S ASSERTED PATENTS

7. GI is the world's leading provider of equipment and supplies to the paintball industry. In 2015, GI acquired KEE Action, including all of its assets, liabilities, rights and privileges.

8. On November 17, 2009, the United States Patent & Trademark Office ("USPTO") duly and legally issued U.S. Patent No. 7,617,820, entitled "Pneumatic Paintball Gun." A true and correct copy of U.S. Patent No. 7,617,820 is attached as **Exhibit A**.

9. On October 15, 2013, the USPTO duly and legally issued U.S. Patent No. 8,555,868, entitled "Variable Pneumatic Sear for Paintball Gun." A true and correct copy of U.S. Patent No. 8,555,868 is attached as **Exhibit B**.

10. On November 5, 2013, the USPTO duly and legally issued U.S. Patent No. 8,573,191, entitled "Variable Pneumatic Sear for Paintball Gun." A true and correct copy of U.S. Patent No. 8,573,191 is attached as **Exhibit C**.

11. On September 25, 2012, the United States Patent & Trademark Office ("USPTO") duly and legally issued U.S. Patent No. 8,272,373, entitled "Compressed Gas-Powered Projectile Accelerator." A true and correct copy of U.S. Patent No. 8,272,373 is attached as **Exhibit D**.

12. On December 25, 2012, the United States Patent & Trademark Office ("USPTO") duly and legally issued U.S. Patent No. 8,336,532, entitled "Compressed Gas-Powered Projectile Accelerator." A true and correct copy of U.S. Patent No. 8,336,532 is attached as **Exhibit E**.

13. On June 3, 2014, the United States Patent & Trademark Office ("USPTO") duly and legally issued U.S. Patent No. 8,739,770, entitled "Compressed Gas-Powered Projectile Accelerator." A true and correct copy of U.S. Patent No. 8,739,770 is attached as **Exhibit F**.

14. On April 6, 2010, the United States Patent & Trademark Office ("USPTO") duly and legally issued U.S. Patent No. 7,690,373, entitled "Paintball Gun With Readily-Removable Pneumatic Assembly." A true and correct copy of U.S. Patent No. 7,690,373 is attached as **Exhibit G**.

15. GI is the owner by assignment of U.S. Patent Nos. 7,617,820, 8,555,868, 8,573,191, 8,272,373, 8,336,532, 8,739,770, and 7,690,373 (collectively, the "Asserted Patents"), and owns all right, title and interest in and to the Asserted Patents, including the right to sue for and recover all past, present, and future damages for infringement of those patents.

16. The Asserted Patents are in full force and effect, enforceable, and are presumed valid.

## GI'S TRADE DRESS

17. In 2006, KEE Action began selling a line of paintball markers having a very distinctive look and feel. The original model was named the "Inverter Mini," or "Mini" for short because it evoked an old style, compact, sub-machine gun often referred to as a "mini machine gun." By packaging the marker's power source in the front grip instead of the rear grip, the front grip took on a wider, longer shape than the typical round posts used by most other markers. The front grip was also positioned very close to the rear grip, providing only a short gap for the trigger guard. From a performance standpoint, this configuration has some limitations. Nevertheless, the aesthetic appeal of the resulting product appearance led to the Mini becoming a big seller. An image of the Mini is included below.



18. Due to the long-time success of the Mini, GI has introduced additional models with the Mini's same distinctive shape under the names Mini GS, Axe and Axe 2.0. These markers are depicted below.







19. Each of these markers shares several distinctive features that paintball consumers associate with a common source. The markers all have a squared-off, boxy shape formed by the flat top of the marker and by the outline of the front and rear grips, which each extend downward from the bore at essentially a ninety degree angle. The bore extends beyond the rear grip only a very short distance, so as to maintain the boxy appearance. In addition, because of the long length of the front grip, the bottom points of the front and rear grips (not counting the $CO_2$ chamber) connect to form a line that is essentially perpendicular to the flat top surface of the marker.

20. Each front grip has a generally convex leading edge and a straight, vertical trailing edge. The front grip of each model is positioned very close to the rear grip, such that the front of each trigger guard connects into the front grip. The close proximity of the front and rear grip actually can reduce the accuracy of the marker because just a slight adjustment of the front grip relative to the rear grip when in play results in a relatively larger shift in aim. The trigger itself bears an ornamental, dual curve shape. Specifically, the top of the trigger has a concave curve extending downward and then slightly shifts to a convex curve at the bottom of the trigger.

6

21. The shape, position and orientation of the ammunition mount are also distinctive and common across each of these markers. In each case, the mount is located just aft of the trailing edge of the front grip. Each mount has a low profile, which adds to the boxy overall shape of the marker.

22. These various features, in combination, give this family of paintball markers the distinctive look and feel that has come to be recognized within the paintball market as a specific trade dress. The specific trade dress is referred to hereinafter as the "Mini Trade Dress." Players refer to markers having the Mini Trade Dress as a "mini" or an "axe," depending on the particular model they are most familiar with. While other markers may have one or two of the features that comprise the Mini Trade Dress, no other marker shared them all—until now.

23. Since the introduction of the Invert Mini paintball marker by KEE Action, the Mini and the other paintball markers bearing the distinctive Mini Trade Dress described above, have been continuously offered through a single source. Over the years, paintball guns having the Mini Trade Dress have become associated with KEE Action and GI in the minds of the relevant consumers.

24. The Mini Trade Dress has been in continuous use by GI and its predecessors-in-interest for ten years and has achieved significant secondary meaning within the paintball industry. Since 2006, GI has spent hundreds of thousands of dollars on advertising, sponsorship and generation of point-of-purchase displays to market their paintball markers bearing the distinctive Mini Trade Dress. A sample of these advertisements is attached in **Exhibit H**. As a result of this lengthy and sustained effort, GI, together with its predecessor KEE Action, has sold over seventy-five thousand paintball markers having the distinctive Mini Trade Dress.

**VALKEN'S INFRINGING ACTS**

25. In late February, 2017, Valken began displaying images of a new marker under the name "Code," which incorporates and copies GI's Mini Trade Dress. A picture of the "Code" marker is depicted below.



26. Valken's "Code" has the same boxy shape formed by the flat top of the marker and by the outline of the front and rear grips extending downward from the bore at essentially a ninety degree angle, and by the bore that extends a very short distance beyond the rear grip. Like GI's paintball markers, the bottom points of the front and rear grip (not counting the CO2 chamber) of Valken's Code connect to form a line that is essentially perpendicular to the flat top surface of the marker.

27. The front grip of the Code has a generally convex leading edge and straight, vertical trailing edge. The front grip is positioned very close to the rear grip, and the front of the trigger guard connects into the front grip from the rear grip. Like GI's markers bearing the Mini Trade Dress, the trigger of the Code bears the same dual curve shape with a concave curve extending downward and then slightly shifting to a convex curve at the bottom of the trigger.

8

28. The ammunition mount on Valken's Code has the same low profile as GI's markers bearing the Mini Trade dress. The ammunition mount is also located just aft of the trailing edge of the front grip, mimicking the location of the ammunition mount on GI's markers bearing the Mini Trade Dress.

29. On information and belief, Valken's Code is mechanically different from GI's paintball markers bearing the Mini Trade Dress. Despite these mechanical differences on the inside, the external appearance of the Code significantly resembles GI's Mini Trade Dress on the outside. This further evidences Valken's explicit effort to incorporate aspects of GI's Mini Trade Dress.

30. Not surprisingly, the marketplace immediately began to draw a connection between Valken's new "Code" marker and GI's paintball markers bearing the "Mini Trade Dress." Consumers on Valken's own Facebook page commented that the Valken Code, "looks like the new axe," "looks like the Empire mini," is "[d]efinitely an axe lookalike," is "right up the Mini alley," and is "a knock off Axe in the looks department." A sample of these comments are included below, but are attached in complete form in **Exhibit I**.



31.     A.N.S. Xtreme Performance, Inc. is a leading online retailer of paintball equipment in the United States, and provides product review videos on its www.ansgear.com website for a wide variety of paintball industry products.  In its video relating to the Valken Code, ANS Gear explicitly notes the similarity of the look and shape of the Valken Code and GI's Mini paintball marker, and that consumers have noticed this similar look and shape.  Specifically, the ANS Gear employee in the video states that that, "from the looks of this gun from the outside," many people think "it's just a Mini, it's a rebranded Mini."

32.     In addition to the stark appearance similarities between Valken's Code and GI's Mini Trade Dress, the Code includes a pressurized solenoid and bolt assembly that infringe one or more claims of each of the Asserted Patents. GI has offered the Code, with its infringing

10

design, for sale within the United States, and, upon information and belief, has begun selling and distributing them to consumers in the United States.

## COUNT I
## Infringement of U.S. Patent No. 7,617,820

33. GI re-alleges and incorporates herein paragraphs 1 through 32 of this Complaint.

34. Valken has infringed and is infringing, either directly or indirectly, literally and/or under the doctrine of equivalents, one or more claims of U.S. Patent No. 7,617,820 in violation of 35 U.S.C. §271, by making, using, offering for sale, selling, and/or importing its Code paintball marker.

35. GI has been damaged as a result of Valken's infringing conduct described in this Count and is entitled to recover from Valken the damages sustained by an amount determined at trial.

36. Valken's infringement is willful and deliberate, entitling GI to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT II
## Infringement of U.S. Patent No. 8,555,868

37. GI re-alleges and incorporates herein paragraphs 1 through 36 of this Complaint.

38. Valken has infringed and is infringing, either directly or indirectly, literally and/or under the doctrine of equivalents, one or more claims of U.S. Patent No. 8,555,868 in violation of 35 U.S.C. §271, by making, using, offering for sale, selling, and/or importing its Code paintball marker.

39. GI has been damaged as a result of Valken's infringing conduct described in this Count and is entitled to recover from Valken the damages sustained by an amount determined at trial.

40. Valken's infringement is willful and deliberate, entitling GI to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT III
### Infringement of U.S. Patent No. 8,573,191

41. GI re-alleges and incorporates herein paragraphs 1 through 40 of this Complaint.

42. Valken has infringed and is infringing, either directly or indirectly, literally and/or under the doctrine of equivalents, one or more claims of U.S. Patent No. 8,573,191 in violation of 35 U.S.C. §271, by making, using, offering for sale, selling, and/or importing its Code paintball marker.

43. GI has been damaged as a result of Valken's infringing conduct described in this Count and is entitled to recover from Valken the damages sustained by an amount determined at trial.

44. Valken's infringement is willful and deliberate, entitling GI to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT IV
### Infringement of U.S. Patent No. 8,272,373

45. GI re-alleges and incorporates herein paragraphs 1 through 44 of this Complaint.

46. Valken has infringed and is infringing, either directly or indirectly, literally and/or under the doctrine of equivalents, one or more claims of U.S. Patent No. 8,272,373 in violation

of 35 U.S.C. §271, by making, using, offering for sale, selling, and/or importing its Code paintball marker.

47. GI has been damaged as a result of Valken's infringing conduct described in this Count and is entitled to recover from Valken the damages sustained by an amount determined at trial.

48. Valken's infringement is willful and deliberate, entitling GI to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT V
### Infringement of U.S. Patent No. 8,336,532

49. GI re-alleges and incorporates herein paragraphs 1 through 48 of this Complaint.

50. Valken has infringed and is infringing, either directly or indirectly, literally and/or under the doctrine of equivalents, one or more claims of U.S. Patent No. 8,336,532 in violation of 35 U.S.C. §271, by making, using, offering for sale, selling, and/or importing its Code paintball marker.

51. GI has been damaged as a result of Valken's infringing conduct described in this Count and is entitled to recover from Valken the damages sustained by an amount determined at trial.

52. Valken's infringement is willful and deliberate, entitling GI to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT VI
### Infringement of U.S. Patent No. 8,739,770

53. GI re-alleges and incorporates herein paragraphs 1 through 52 of this Complaint.

54. Valken has infringed and is infringing, either directly or indirectly, literally and/or under the doctrine of equivalents, one or more claims of U.S. Patent No. 8,739,770 in violation of 35 U.S.C. §271, by making, using, offering for sale, selling, and/or importing its Code paintball marker.

55. GI has been damaged as a result of Valken's infringing conduct described in this Count and is entitled to recover from Valken the damages sustained by an amount determined at trial.

56. Valken's infringement is willful and deliberate, entitling GI to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT VII
### Infringement of U.S. Patent No. 7,690,373

57. GI re-alleges and incorporates herein paragraphs 1 through 56 of this Complaint.

58. Valken has infringed and is infringing, either directly or indirectly, literally and/or under the doctrine of equivalents, one or more claims of U.S. Patent No. 7,690,373 in violation of 35 U.S.C. §271, by making, using, offering for sale, selling, and/or importing its Code paintball marker.

59. GI has been damaged as a result of Valken's infringing conduct described in this Count and is entitled to recover from Valken the damages sustained by an amount determined at trial.

60. Valken's infringement is willful and deliberate, entitling GI to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT VIII
## FEDERAL UNFAIR COMPETITION (15 U.S.C. §1125(A))

61. GI re-alleges and incorporates herein paragraphs 1 through 60 of this Complaint.

62. GI is the owner of valid common law rights in its Mini Trade Dress, which it has used, together with its predecessors-in-interest, continuously in connection with the sale of paintball markers since GI first offered the Invert Mini in 2006.

63. GI's Mini Trade Dress is distinctive by virtue of acquired distinctiveness resulting from GI's efforts in promoting and using the Mini Trade Dress, together with its predecessors-in-interest, continuously since 2006, including use through the sale of over seventy-five thousand paintball markers featuring the Mini Trade Dress throughout the United States over that time.

64. By copying GI's Mini Trade Dress with its new Code marker, Valken has deliberately and willfully attempted to trade on of the long-standing and hard-earned goodwill, reputation and selling power established by GI in connection with GI's paintball markers bearing the Mini Trade Dress.

65. Valken's actions evidence an intent to confuse consumers as to the origin and/or sponsorship of Valken's products and/or encourage consumers to buy a "look-alike" product that provides the appearance of owning and operating a genuine marker from GI bearing the Mini Trade Dress.

66. Valken's unauthorized and tortuous conduct has deprived, and will continue to deprive, GI of the ability to control the consumer perception of GI's goods marketed under its trade dress, placing the valuable reputation and goodwill of GI in the hands of Valken, over whom GI has no control.

67. Valken's conduct is likely to cause confusion, mistake or deception as to the affiliation, connection or association of Valken's products with GI's products, and as to the

origin, sponsorship or approval of Valken and its goods, in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1).

68. Upon information and belief, Valken's acts have been intentional, with full actual knowledge of and complete disregard for GI's Mini Trade Dress.

69. The intentional and willful nature of the aforementioned acts entitles GI to recover statutory damages, Valken's profits, GI's actual damages, recovery of costs, and enhanced damages as an exceptional case, pursuant to 15 U.S.C. §1117.

70. As a result of Valken's aforementioned conduct, GI has suffered and continues to suffer loss of goodwill and other irreparable harm for which GI has no adequate remedy at law. Accordingly, only an injunction from this Court can prevent GI's further irreparable harm at the hands of Valken.

## COUNT IX
### Common Law Trademark Infringement of the Empire Trade Dress

71. GI re-alleges and incorporates herein paragraphs 1 through 70 of this Complaint.

72. GI is the owner of valid common law rights in its trade dress, which it has used, together with its predecessors-in-interest, continuously with the sale of its paintball markers bearing the Mini Trade Dress since the Invert Mini was first released in 2006.

73. GI's trade dress is distinctive by virtue of acquired distinctiveness resulting from GI's efforts in promoting and using the Mini Trade Dress, together with its predecessors-in-interest, since 2006, selling over seventy-five thousand paintball markers using the Mini Trade Dress across the country over that time.

74. Valken's actions complained of herein are likely to cause, confusion, mistake or deception among consumers as to an affiliation, connection or association between Valken's Code paintball marker and GI's paintball markers bearing the Mini Trade Dress, and as to the

origin, sponsorship or approval of Valken's paintball markers, in violation of New Jersey common law.

75. Valken's unauthorized conduct also has deprived and will continue to deprive GI of the ability to control the consumer perception of GI's paintball markers provided in connection with its Mini Trade Dress, placing the valuable reputation and goodwill of GI in the hands of Valken over whom GI has no control.

76. Because Valken had at least constructive notice of GI's prior use of and rights in the Mini Trade Dress before Valken began using its infringing paintball marker design designation, Valken's unlawful trademark infringement is willful.

77. As a result of Valken's conduct, GI is likely to suffer harm, and has already been injured.

## COUNT X
## Unfair Competition Under N.J.S.A. §§ 56:4-1 *et. seq.*

78. GI re-alleges and incorporates herein paragraphs 1 through 77 of this Complaint.

79. Valken's actions complained of herein constitute acts of unfair competition through Valken's appropriation for their own use of the reputation and goodwill associated with GI's Mini Trade Dress in violation of N.J.S.A. §§ 56:4-1 *et seq.*

80. Valken committed this infringement willfully, knowingly, maliciously and in conscious disregard of GI's rights in its Mini Trade Dress.

81. As a result of Valken's aforementioned conduct, GI has suffered and continues to suffer loss of goodwill and other irreparable harm for which GI has no adequate remedy at law. Accordingly, only an injunction from this Court can prevent GI's further irreparable harm at the hands of Valken.

**JURY DEMAND**

GI requests a trial by jury on all issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, as to all Counts of this Complaint, GI request that this Court enter a judgment in favor of GI and against Valken on each Count herein, and grant relief as follows:

A. Permanently enjoining and restraining Valken, its parents, subsidiaries, holding companies, licensees, owners, directors, officers, partners, assigns, related entities, affiliates, predecessors, successors, employees, representatives, trustees, receivers, agents and any other persons or entities acting on behalf of Valken or with Valken's authority, from:

a. selling, offering for sale, distributing, advertising or promoting within the United States any goods under or in connection with the GI's Mini Trade Dress, expressly including through its sale of the "Code" marker;

b. doing any act or thing that is likely to induce the belief that Valken's goods, services or activities are in some way connected with GI's business, or that is likely to injure or damage GI's rights in its Mini Trade Dress or the associated goodwill; and

c. further infringing upon any claims of the Asserted Patents, pursuant to 35 U.S.C. § 283;

B. Requiring that Valken be ordered to recall from the channels of United States trade all products, packaging, advertising and promotional material sold or distributed by Valken or its affiliates that uses or reflects GI's Mini Trade Dress pursuant to 15 U.S.C. §1116(d);

C. Requiring Valken to reimburse GI for all damages GI has suffered by reason of Valken's acts of infringement and unfair competition, to account for and pay to GI all profits derived by reason of such acts, and, based on the willfulness of Valken's actions including its infringement of the Asserted Patents and its use of GI's Mini Trade Dress, to remit to GI treble

damages, profits, or statutory damages (including as provided by 35 U.S.C. §284, and 15 U.S.C. §1117);

  F. Finding that this case constitutes an exceptional case pursuant to 15 U.S.C. §1117 and or 35 U.S.C. §285, and awarding GI its reasonable attorneys' fees and disbursements incurred in bringing this action;

  G. Requiring that Valken reimburses GI for all disbursements and costs incurred in bringing this action;

  I. Requiring that Valken surrender for destruction all infringing products as well as all advertisements, brochures, promotional prints, and sales sheets in its possession or control within the United States that use GI's Mini Trade Dress, pursuant to 15 U.S.C. §1118, and immediately cease use of and delete any Internet advertisements featuring said trade dress; and

  J. Awarding GI such other and further relief as this Court may deem equitable.

Dated: July 10, 2017

Respectfully Submitted,

_____
JOHN M. HANAMIRIAN, ESQ.
HANAMIRIAN LAW FIRM, P.C.
NJ Attorney I.D.: 002861992
40 E. Main Street
Moorestown, New Jersey 08057
(856) 793-9092
(856) 793-9121 – facsimile
jmh@hanamirian.com

Attorney for Plaintiffs
*G.I. Sportz Inc. and*
*GI Sportz Direct LLC*